FILED

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA 2018 MAY -1  PM 12: 52
TAMPA DIVISION

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

L.C., individually and on behalf of
G.C., a minor,

CASE NO:

        Plaintiff,

vs.                                    8:18 cv  1066 T 23 AAS

PINELLAS COUNTY SCHOOL BOARD,

        Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, L.C., individually and on behalf of G.C., a minor, by and through

the undersigned counsel, and in accordance with the applicable Federal Rules of Civil Procedure,

and hereby sues the defendant, PINELLAS COUNTY SCHOOL BOARD and alleges as follows:

## PARTIES

1.  The Plaintiff, L.C., is an individual *sur juris* who resides in Pinellas County, Florida, and

    who is the parent, mother, of G.C.

2.  The Plaintiff, G.C. is a twelve (12) year old boy, who resided in Pinellas County, Florida

    and was a student within the Pinellas County Public School system at all times material to

    this action.

3.  The Defendant, School BOARD of Pinellas County, Florida (herein after "BOARD") is a

    corporate body and governmental agency duly empowered by the constitution and statutes

    of the state of Florida to administer, manage, and operate the Pinellas County Public

    Schools.

4.  The BOARD receives local, state and federal funding for the education of children with

    disabilities. The BOARD meets the definition of a public entity under 42 U.S.C. § 12131.

*Disability Independence Group, Inc. * 2990 Southwest 35th Avenue * Miami, FL 33133*

## JURISDICTION AND VENUE

5.   Jurisdiction for this action also vests pursuant to 42 U.S.C. § 12131 for claims brought under the Americans with Disabilities Act of 1990; 29 U.S.C. § 794, for claims brought under Section 504 of the Rehabilitation Act of 1973 and 42 U.S.C. §§ 1983 & 1988 for violations of L.C. and G.C.'s civil rights; and the District Court's pendent jurisdiction over the state claims alleged, which arise out of the same operative facts and circumstances.

6.   Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that the Board is located in the judicial district and the cause of action accrued in the judicial district.

## GENERAL ALLEGATIONS

7.   This action arises out of the gross neglect of the District for failing to protect G.C. from a known sexual predator and the district's efforts after the fact to push the student out of the public school system.

8.   G.C. is a student with a disability as defined by Americans with Disabilities Act, Section 504 of the Rehabilitation Act and Pinellas County public schools.

9.   L.C. is the natural parent, mother, of G.C.

10.  G.C. was a student of the Pinellas County public schools (PCPS).

11.  G.C. is a student who has been identified by PCPS as having a disability and requiring Exceptional Student Educational (ESE) services.

12.  G.C.'s disabilities make him particularly susceptible to peer pressure. He is easily influenced by other students and vulnerable to following other students in an effort to be liked and accepted. PCPS was aware of this disability at all times relevant.

13.  Services and placement are determined through an Individualized Education Plan (IEP). G.C. also has a behavior intervention plan (BIP) to address his problem behaviors.

*Disability Independence Group, Inc. * 2990 Southwest 35th Avenue * Miami, FL 33133*

14. On November 30, 2015, G.C. was unilaterally remove from his homeschool, Tarpon Springs Middle School in Tarpon Springs, Florida and transferred to the alternative school, Pinellas Secondary School ("alternative school") located in Pinellas Park, Florida, for misbehaving.

15. Students with behavior problems at their homeschools, those who have been arrested or otherwise involved with the criminal justice system, are placed in the alternative school.

16. The alternative school's mission is to improve problem behaviors. The school's mission statement and philosophy are published as the following:

> At Pinellas Secondary School (PSS), our focus is two-fold: both academic and behavioral. Our goals are to further the education of our students and to assist them with learning to identify and change behaviors that interfere with their academic and life goals. As a team, we are committed to helping students learn to replace undesirable behaviors with appropriate, self-esteem building behaviors. What sets us apart is how we accomplish these goals. At Pinellas Secondary School, our focus is on the positive, believing that whatever we water, grows.
>
> We employ a Positive Behavior Plan which includes a focus on the positive in all that we do and a recognition and enforcement of our community boundaries. Our positive focus is achieved by teaching a variety of life and recovery skills aimed at developing positive, life-enhancing decision making. It means valuing the development of interpersonal and conflict resolution skills in addition to traditional academic learning. Our boundaries are established democratically and consistently implemented throughout the entire school community. As a staff, we recognize that we teach best by modeling what we believe, by living the changes and the change process that we hope to see in our students and in our world.

17. G.C. had behavior problems at his homeschool and was removed by the homeschool and placed into the alternative school.

18. G.C. and his family were told that the alternative school would provide the supports necessary to address G.C.'s problem behaviors with the ultimate goal of returning to his

home school.  The family reasonably relied upon these representations when accepting the placement into the alternative school.

19.   G.C. began attending the alternative school on February 2, 2016.

20.   Despite the mission of the alternative school, on his eleventh day in the alternative school, February 16, 2016, G.C. was placed in an "in school" suspension room for using profanity.

21.   An "in-school" suspension is a disciplinary measure that removes the student from classroom and punishes the student for a violation of the student code of conduct.  An in-school suspension is punitive and imposed without regard to a student's disability.

22.   G.C. had a behavior plan for using profanity. Placing the student in the in-school suspension room was not an appropriate intervention when G.C. cursed.  Despite the plan being in place, G.C. was removed from class and wrongfully placed in the in-school suspension room.

23.   There were several other students in the suspension room including, Z.W.M., a 17 year old who was also a registered sexual predator.  G.C. was 11 years old.

24.   G.C. should never have been placed with older students.

25.   PCPS knew Z.W.M. was a registered sexual predatory and were on notice of his issues and propensity towards young boys.

26.   There were three adults in the room.  Of the three, Mr. Miah, was individually assigned to Z.W.M.  Although, Mr. Miah was assigned to Z.W.M., a known sexual predator, he was reading a newspaper rather than doing his job.  Shuntiel Green and Antonio Brown, paraprofessionals, were also present at the front of the room.

27.   Z.W.M. had a known preference for young boys and was unable to suppress his urges while at school.

28. Z.W.M. was in appropriately allowed to communicate with G.C. while in the in-school suspension room by passing notes. Ms. Green and Mr. Brown saw Z.W.M. passing notes but did nothing to stop the communication, did not read the communications and allowed it to continue without intervention. These failures to intervene are negligent and in violation of their responsibility.

29. In these communications, Z.W.M. was urging G.C. to leave the suspension room.

30. G.C., who was only 11 at the time, being angry and vulnerable, agreed to leave the suspension room.

31. Z.W.M. and G.C. were allowed to leave the suspension room by themselves and without any adult supervision. Z.W.M. and G.C. walked passed the three adults in plain view of the three adults and the three adults did nothing to stop them. The inaction by all three adults in the room are negligent.

32. The three adults did nothing to stop the students from leaving the suspension room and did nothing to supervise the students after they left the suspension room. The adults did nothing to ensure that G.C. was safe from Z.W.M., a registered sexual predator.

33. Z.W.M. kidnapped G.C. from the school campus and proceeded to sexual assault G.C. G.C. was able to escape from Z.W.M. by faking an asthma attack and going into a store where he was able to call his mother and otherwise ask the adults present for help. The adults called the police when it became clear that G.C. was in danger and in fear of Z.W.M.

34. Z.W.M. was arrested and eventually plead guilty to kidnapping and lewd and lascivious conduct against G.C. and is currently incarcerated for his crimes.

35. Upon information and belief, this was not the first victim of Z.W.M.'s predator behavior against another, younger, PCSD student. It is suspected that at least two other students were injured by Z.W.M.  PCPS was on notice of these events prior to the day in question.

36. The Board did nothing to ensure that other students would be safe from Z.W.M. There was no safety plan in place that ensured that he could not and would not communicate with other, younger and vulnerable, students.  There was no plan in place to ensure that Z.W.M. would not be able to leave the classroom or otherwise walk around the school without proper supervision.  There was no plan in place regarding how to respond if Z.W.M. was able to have contact with another student, if Z.W.M. left the classroom unsupervised or left the school without permission.

37. Z.W.M. was allowed to walk out of the classroom and off the school campus with G.C., a disabled student, without any attempted by any school staff member to stop them.

38. Z.W.M. was allowed unchecked access to this disabled 11 year old student.

39. Had the district provided proper supervision while in the alternative school, G.C. would not have been in a position to be harmed by this predator.

40. Had the predator not had access to G.C., on a school campus, G.C. would not have been kidnapped nor attacked.

41. After the attack, PCPS did little, if anything to support G.C.

42. G.C. was then allowed to return to his home school, Tarpon Middle, and he returned to school on February 25, 2016.

43. Upon his return, G.C. was placed into all AP Honors classes despite never before being in AP classes. This placement was not appropriate and only caused more stress and anxiety for G.C.

44. In addition, his home school did nothing to address the trauma G.C. suffered and G.C. did not feel safe in school and often refused to go to class or left school early.

45. On April 14, 2016, when G.C. reported to school personnel that he was afraid and having flash backs, the school called to have him Baker Acted from school, an involuntary civil commitment. (In Florida, involuntarily commitment is also known as the Baker Act.)

46. G.C. was able to return school, but continued to have trouble coping with what happened to him on February 16, 2016. G.C. was Baker Acted again on May 6, 2016.

47. The trauma was clearly evident, but PCPS failed to address his needs both academically and emotionally.

48. The district decided to remove G.C. from the general education setting and placed him into an emotional behavioral disability (EBD) cluster program at another school location, Dunedin Highland Middle School.

49. Promises were made that G.C. would be safe and that the cluster program would be a smaller and more supported, warm, loving and most importantly a safe environment for G.C.. Believing the representations made, G.C.'s family consented to the transfer.

50. G.C. began at Dunedin Highland Middle School, in Dunedin, Florida, for the last week of the 2015-2016 school year.  He attended three out of four days.  On each day G.C. was in attendance, Dunedin staff called the family to pick G.C. up early. G.C. spent an hour or two in school then the school called and stated that G.C. needed to be picked up early.

51. G.C. returned to the EBD cluster program at Dunedin Highland Middle School for the 2016-17 school year. It became clear that the cluster program was not safe, secure or appropriate for G.C.

52. During the first two weeks of school, G.C.'s family was called four times to pick him up early. G.C. was scared and anxious every time he went to school. The cluster program combines multiple grades into each classroom. G.C. was being educated with older students. Students similar in age and demeanor to Z.W.M., the predator who kidnapped and assaulted G.C. G.C. was in a constant state of fight or flight. He was in a constant state of fear and anxiety. G.C. was picked up early from school almost every day and was calling home an average of ten times a day.

53. G.C.'s family immediately requested a meeting with the school and asked that he be allowed to return to his home school with the proper supports in place. PCPS refused this request.

54. While in the EBD cluster program, G.C. rarely attended classes. Other students were constantly harassing, teasing and bullying G.C. both in school, on the bus and even outside of school. The parents reported the bullying, harassment and teasing but the school did nothing to address the complaints or otherwise keep G.C. safe.

55. On September 28, 2016, G.C. was injured by the classroom aide, Mr. Lawrence, a staff member in the EBD cluster program, who flipped over a chair G.C. was sitting in. G.C. was now not only scared by his classmates but now of the adults in the classrooms. Despite the family's complaints regarding this incident, there were no consequences imposed on this staff member, further securing G.C.'s belief that he was not safe on the school campus.

56. On December 1, 2016, G.C. was left at the school by the bus driver (alone) without any parent or school administrator being advised of the same. G.C. was left at school for hours without supervision which is something that should never happen much less to a student who was previously victimized by another student because of improper supervision by the

school. G.C. is vulnerable to being victimized again by another student or adult who might be in the area.

57.   On December 13, 2016, G.C.'s bus route was unilaterally changed without notice to the family. Instead of picking the student up curb to curb – which means at his front door - the route was changed to the location closest to the student's home. This left G.C. home alone again with no transportation to school. This incident occurred during the week of finals testing and after several days, once the mistake was corrected, it took another 3 days before the system was updated. Transportation did not being again until after the winter break in January 2017.

58.   G.C. constantly received harassing text messages from other students. Samples of text messages were provided to the school on January 18, 2017.

59.   On January 29, 2017, G.C. was suspended for being in the hallway.  The only reason G.C. was in the hallway was because another student refused to open the classroom door and was taunting G.C. through the door.  The other student did not get into trouble.

60.   G.C.'s cell phone was smashed by another student.

61.   Instead of creating a safe and appropriate learning environment for G.C., he was in a tortured situation. G.C.'s school refusal increased, his problem behaviors increased, his grades decreased and his emotional state and self-image deteriorated.

62.   The EBD cluster program was a complete failure.

63.   The district's steadfast decision to maintain G.C. in an EBD cluster ensured that he remained in an unsafe, stressful environment which was unsuccessful in addressing any of G.C.'s needs both academically and emotionally.

64. Upon information and belief, the decision to ignore all requests to change placements and ignore all bullying complaints, was an intentional effort to push G.C. out of the public school system. These efforts were successful. G.C. left the public school system before the end of the 2016-2017 school year and has not returned to public school to date.

65. G.C. has lost all confidence in himself academically and socially. He now believes that he cannot function in a general education classroom.

66. G.C.'s anxiety and fear continue to date. He continues to refuse to go to a traditional school and has trouble being in loud and crowded areas.

67. G.C. was punished and disciplined without regard to his disability or trauma.

68. The Family have lost time and money from work. G.C.'s step-father was forced to take family medical leave to take care of G.C. while he has been home sick. The family has been adversely impacted not only financially but emotionally and G.C. has been harassed and further traumatized on school campus for the last two school years, 2015-16 and 2016-17.

69. The negligent supervision, indifference to bullying complaints, along with a breach of trust and confidence by the BOARD has caused G.C. to experience physical injuries and severe psychological injuries, including but not limited to the loss of faith, increased problem behaviors, anxiety, mood swings, and the loss of capacity for the enjoyment of life. These injuries suffered are severe and continuing.

70. The BOARD, as the operator and owner of Pinellas Secondary School, Tarpon Springs Middle School and Dunedin Highland Middle School had a duty to operate said schools with reasonable care and for the protection and safety of those students who were actively attending said institution on or about the date of the incidents at issue in this case.

71. The Plaintiff has complied with all the conditions precedent to maintaining this action, including statutory notice to the Defendant BOARD pursuant to Florida Statue section 768.28. See notices attached hereto as Exhibit 1 (composite).

72. Plaintiff, by and through his mother, L.C., has engaged the law firms of Asnis, Srebnick and Kaufman and Langer Law, P.A. to represent G.C. and L.C. in this action and who are obligated to pay reasonable fees for their services and costs related thereto.

## COUNT I
### NEGLIENT SUPERVISION

73. Plaintiff repeats and realleges the allegations in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

74. Defendants had a legal duty to supervise G.C. while he was on the school campus.

75. Defendants breached such duty by failing to supervise G.C. in a manner that protected him from suffering sever bodily injury by a known sexual predator.

76. The three staff members present in the suspension room along with the school administration where the Defendant BOARD's agents, employees and/or teachers and were negligent in their duty to supervise the Plaintiff.

77. There was no plan, procedures, polices or safeguards in place to protect G.C. from a known sexual predator.

78. G.C. was not Z.W.M.'s first victim on a school campus. The Board knew or should have known of Z.W.M. status and prior acts and the BOARD knew or should have known that G.C. was a potential victim and unsafe in and around Z.W.M.

79. As a direct and proximate cause of the negligent supervision, the Plaintiff suffered serve bodily injuries and emotional trauma.

80.   The injuries were entirely preventable.

WHEREFORE, the Plaintiffs sue Defendants for damages in excess of $15,000 including pre-and post-judgment interest to the extent allowed by law, plus costs and interest, and demands a jury trial of all triable issues.

## COUNT II
### NEGLIGENT SUPERVISION

81.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

82.   Defendants had a legal duty to supervise G.C. while he was on the school campus.

83.   Defendants breached such duty by failing to supervise G.C. in a manner that protected him from suffering bodily injury and harassment from his teachers and classmates.

84.   G.C. was injured when his teacher flipped over a chair that G.C. was sitting in.

85.   G.C. was also verbal harassed and physical attacked by other students while on campus. His phone was broken, he was hit, teased, bullied, prevented from getting into his classroom and vulgar language was used to describe his sister and mother.

86.   When G.C. complained, his teachers and other students, increased the degree and intensity of the harassment.

87.   School became a hostile environment.

88.   G.C. and his family repeated made complaints, reached out to the school administration for assistance and asked for a change in placement.

89.   The Board knew or should have known that there was a hostile environment created and that G.C. was suffering.

90.   As a direct and proximate cause of the negligent supervision, the Plaintiff suffered bodily

injuries and severe emotional trauma.

91.  The injuries were entirely preventable.

WHEREFORE, the Plaintiffs sue Defendants for damages in excess of $15,000 including

pre-and post-judgment interest to the extent allowed by law, plus costs and interest, and demands

a jury trial of all triable issues.

## COUNT III
## NEGLIGENCE

92.  Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 72 of the Complaint
as if fully set forth herein.

93.  At all times material, the BOARD owed a duty to G.C. to use reasonable care to ensure
G.C.'s safety, care, health, and well-being while on a school campus.

94.  At all times material, the BOARD was in *loco parentis* and was held to a standard of
reasonable protection for the minor disabled child (Plaintiff) who was its student.

95.  At all times material, the BOARD knew, or in the exercise of reasonable care should have
known that Z.W.M., who was a sexual predator, was dangerous and a threat to the health,
safety, and welfare of G.C. and other students requiring the school to have a safety plan
and proper supervision in place as well as having staff properly trained to ensure that the
predator did not have access to or victimize other students while on a school campus.

96.  At all times material, the BOARD owed G.C. a duty to ensure that Z.W.M., the sexual
predator, did not have access to or contact with minor students like G.C. and that the staff
working in and around the predator were properly trained to protect other students on the
school campus.

97.  At all times material, the BOARD had a duty to ensure that the appropriate safe guards and

supervision were in place to protect students from Z.W.M., a known sexual predator.

98. G.C. was not Z.W.M.'s first victim.

99. At all times material, the BOARD had a duty to ensure that the staff working with and having contact with the sexual predator were trained to ensure G.C.'s safety on the school campus.

100. At all times material, the BOARD breached these duties in one or more of the following ways:

    a. Failing to provide a safe environment for G.C. where he would be free from assault by a sexual predator;

    b. Failing to disclose its awareness of fact that there was a sexual predator on campus with G.C.;

    c. Failing to have policies and procedures in place to protect its students from known sexual predators;

    d. Allowing G.C. and Z.W.M. to leave the in school suspension room unsupervised;

    e. Failing to properly train the staff working with the sexual predator to ensure that he would not communicate with or otherwise have access to other students;

    f. Failing to have policies in place that prohibit the sexual predator from having access to other students without proper adult supervision;

    g. Failing to supervise Z.W.M.; and

    h. Failing to provide the appropriate services, supports, interventions and/or training for staff interacting with G.C, a disabled student, vulnerable to be taken advantage by a sexual predator.

101. As a further direct and proximate cause of the negligence of the BOARD, G.C. was subjected to a kidnapping and assault by a known sexual predator which caused G.C. to suffer physical injury and psychological injures and suffering, increased problem behaviors, anxiety and loss of trust and loss of the capacity for the enjoyment of life.

102. As a further direct and proximate cause of the negligence of the BOARD, G.C. has incurred medical and psychological expenses for the treatment of his injuries and will incur such expenses in the future.

WHEREFORE, the Plaintiffs sue defendant Pinellas County School BOARD for damages in excess of $15,000.00 including pre-and post judgment interest to the extend allowed by law, plus costs and interest, and demand a trial by jury for all triable issues.

### COUNT IV
### NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

103. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

104. At all times material, the BOARD owed a duty to the public and specifically to G.C., a disabled minor, to employ qualified and competent staff to work within its schools, and specifically within its segregated and clustered programs, including the alternative school which houses both disabled students and students charged with and convicted of criminal offenses.  This duty is even greater in the context of a public school where parents have a trust and faith in the leaders, a reliance on those who are chosen to lead, and the school acts in *loco parentis*.

105. The BOARD has an extra duty to protect students with disabilities and receives local, state and federal monies to do the same. This duty includes having the appropriate services, supports, interventions and trained staff in place to meet the unique needs of each disabled student, including G.C.

106. At all times material, the BOARD owed a duty to the public and Plaintiff, G.C., to make an appropriate investigation of its employees, servants, and/or agents who were in or would

be placed in a position to come into contact with minor and disabled students of the BOARD.

107. At all times material, the BOARD owed a duty to Plaintiff, G.C. to terminate any and all employees, servants and/or agents that it knew or should have known had engaged or sought to engage gross neglectful conduct.

108. At all times material, the BOARD owned a duty to Plaintiff, G.C. to make an appropriate investigation of its programs to ensure that students with disabilities are safe from predators and receiving the appropriate services, supports, accommodations and interventions to ensure these students' safety on school campuses.

109. At all times material, the BOARD owed a duty to Plaintiff, G.C. to make an appropriate investigation of its employees, servants, and/or agents who were in or would be placed in a position to come into contact with minor and disabled students, and to ensure the disabled students' individual needs were being met and that they were kept safe from sexual predators.

110. At all times material, the BOARD breached its duty to Plaintiff, G.C. in the following ways:

    a. failing to hire competent and qualified employees, servants, agents and/or agents without proclivities to engage in neglectful acts when in charge of its minor disabled students;

    b. failing to hire competent and qualified employees, servants, and/or agents with knowledge and training needed to accurately identify neglect of disabled students, especially those vulnerable students placed in the alternative schools and act accordingly;

    c. failing to train its employees, servants and/or agents of the unique individual needs of G.C. and his vulnerabilities;

d.  failing to train its employees, servants and/or agents to identify and report when a member of the BOARD staff is engaging in neglectful acts while in charge of its minor disabled students;

e.  failing to supervise the aides and paraprofessionals and other support staff in a manner to prevent the neglect of its minor disabled student G.C.;

f.  failing to train its employees, servants and/or agents to report neglectful acts by other employees, servants, and/or agents;

g.  failing to terminate or reassign those employees, servants, and/or agents who were allowed neglect to occur;

h.  failing to terminate and/or provide remedial measures to ensure the safety of students once the Defendant BOARD, knew or should have known about the neglectful conduct;

i.  failing to procure or develop policies and procedures to prohibit neglect by aides, paraprofessionals and other support staff and teachers;

111. As a direct and proximate result of the BOARD's negligence, G.C. suffered gross neglect at the alternative school and neglect and abuse at the Dunedin Highland Middle School that caused serious bodily injury to G.C. and emotional injury to G.C.

112. As a direct and proximate result of the negligence of the BOARD, G.C. was abused and neglected, causing him to suffer mental pain, anxiety, fear of attending school, increased problem behaviors, and loss of faith and capacity for the enjoyment of life.

113. As a further direct and proximate cause of the negligence of the BOARD, G.C., has incurred past medical and psychological expenses for the treatment of his injuries and will incur such expense in the future.

WHEREFORE, Plaintiffs, sue defendant BOARD, for damages in excess of $15,000.00 including pre-judgment and post judgment interest to the extent allowed by law, plus costs and interest, and demand a trial by jury for all triable issues.

## COUNT V

### 42 U.S.C. SECTION 1983

114. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

115. At all times material, the Fourteenth Amendment provides Plaintiff a right as a public school student to personal security and bodily integrity and Equal Protection.

116. Defendant, BOARD, was a state actor acting under the color of state law.

117. Defendant, BOARD, subjected G.C., to violations of his right to personal security and bodily integrity and Equal Protection by:

    a. Failing to adequately protect G.C. from Z.W.M, a known sexual predator, who had victimized other students previously;

    b. Failing to adequately train the staff working with G.C. and Z.W.M. to ensure that G.C.'s individualized needs were met to ensure his safety from abuse and/or neglect while on school campus;

    c. Failing to adequately supervise employees and/or agents of the BOARD, to ensure that disabled student's individual needs are being met and that those same students are not able to be abused and/or neglected;

    d. Manifesting deliberate indifference to the abuse and neglect of G.C.; and

    e. Manifesting a deliberate indifference to the retaliation that G.C. and his parents were subjected to for bring the abuse and neglect to the attention of the BOARD's employees.

118. Defendant, BOARD, has and/or had customs or policies of:

    a. Failing to ensure that Z.W.M. did not have access to or contact with other more vulnerable students without proper supervision;

    b. Failing to adequately train and supervise BOARD employees with regard to maintaining, preserving and protecting students with disabilities from violations of their right to personal security, bodily integrity and Equal Protection.

119. Defendant, BOARD's policies and practices constitute disparate treatment of and deliberate indifference towards disabled students.

120. As a direct and proximate result of the BOARD's unconstitutional customs and practices, G.C. was exposed to abuse and/or neglect which caused great bodily injury and psychological harm, anxiety, an increase in problem behaviors and trauma.

121. As a further direct and proximate cause of the BOARD's unconstitutional customs and policies, G.C. has incurred past medical and psychological expenses for the treatment of her injuries and will incur such expenses in the future.

WHEREFORE, Plaintiffs sue defendant BOARD for damages in excess of $15,000.00 including prejudgment and post-judgment interest to extent allowed by law, plus attorneys' fees and costs and interest and demands a trial by jury for all triable issues.

## COUNT VI
## VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT

122. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

123. Plaintiff further alleges that the District failed to educate him in the least restrictive environment and failed to provide the appropriate and necessary services and supports to ensure that G.C. received the benefit of and had equal access to his education in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165.

124. The District is a public entity and recipient of federal financial assistance, and is therefore subject to Title II.

125. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1)&(2).

126. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

127. Excluding children from the public-school classroom because of a disability or not placing a student in the least restrictive environment is exactly the type of discrimination and segregation the ADA and its amendments aim to prevent and specifically prohibit.

128. Further, the regulations implementing the ADA require that "a public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

129. As public entities and instrumentalities of the state, the District is prohibited from providing "a qualified individual with a disability with an aide, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others." 28 CFR 35.130(b)(1)(iii)

130. The District has discriminated against G.C. in violation of the ADA on the basis of his disabilities by failing educate him in the least restrictive environment and failing to provide him the necessary supports and services to ensure equal access to and benefit from his education. As a result of the District's policies, G.C. was pushed out and continues to remain out of school.

131. The actions and omissions of the District were done with deliberate indifference to the rights of G.C., and his parents, and as such, the Plaintiffs are entitled to damages for their injuries as a result of these discriminatory actions and policies.

WHEREFORE, L.C., individually and on behalf of G.C., respectfully request this Court to declare the actions of the Defendants violate the Americans with Disabilities Act, issue a permanent injunction enjoining the Defendants from discriminating against students with disabilities and awarding Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## COUNT VII
## SECTION 504 OF THE REHABILITATION ACT OF 1973
### 29 U.S.C. § 794(a)

132. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

133. Plaintiffs further allege that G.C. has a disability that substantially limits one or more major life activities and is a person with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. §706(8).

134. G.C. is otherwise qualified under section 504 of the Rehabilitation Act because he met the essential eligibility requirements of the District at all times material hereto.

135. Defendant is a recipient of federal financial assistance.

136. The District's policies, practices and procedures violated the Plaintiffs' rights under Section 504 of the Rehabilitation Act by discriminating against the Plaintiff because of his disability.

137. Section 104.33 requires that Defendants to provide FAPE to "each qualified handicapped person who is in the recipient's jurisdiction." For purposes of Section 504, an "appropriate education" is the:

provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

138. An "appropriate education" can also be provided by education a student in the least restrictive environment with the appropriate services and supports in place. 34 C.F.R. §104.33(b)(2).

139. Because the District did not educate G.C. in the least restrictive environment or provide the appropriate services and supports, they violated section 504.

140. Repeatedly disciplining, removing and suspending G.C. for identified and known problem behaviors, resulted in an escalation of those behaviors, increased and harsher discipline, increased and lengthier removals from the classroom, his peers and educational environment, which lead to trauma, a dislike for learning, and a decrease in self-esteem and self-image.

141. The Defendant has discriminated against G.C. in violation of Section 504 of the Rehabilitation Act on the basis of his disabilities and successfully pushed G.C. out of the public school system.

142. The Defendant has discriminated against G.C. in violation of Section 504 of the Rehabilitation Act by unnecessarily segregating G.C.. into a segregated and isolated classroom and without proper supports or services;

143. As a result of the Districts violations, G.C. and his parents continue to be harmed.

144. The actions of the District were done with deliberate indifference to the rights of G.C., and his parents, and as such, the Plaintiffs are entitled to damages for their injuries as a result of these discriminatory policies.

WHEREFORE, L.C., individually and on behalf of G.C., respectfully pray that this Court grant the following relief against the Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the District's practices, policies and procedures have subjected G.C. to discrimination in violation of Section 504 of the Rehabilitation Act permanently enjoining the District from any practice, policy and/or procedure which would deny students with disabilities equal access to and benefit of District services, award damages, reasonable costs, attorneys' fees and any other relief this court deems necessary and appropriate.

## COUNT VIII
## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

145. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

146. Students have the right to be protected from harassment and bullying related to a perceived sexual orientation status.

147. Non-reporting and allowance of harassment is in violation of Title IX, section 1006.147, F.S., and the District's own policy manual on bullying and harassment.

148. G.C. was relentlessly and continuously bullied and harassed regarding his sexual orientation.

149. Complaints were made to the school throughout the 2016-2017 school year, yet were

ignored or dismissed by the school employees, IEP team and administration and district personnel.

150. It was incumbent on school officials to take seriously claims of lesbian, gay, bisexual or transgender (LGBT)-related harassment and fully and effectively investigate and resolve it.

151. The U.S. Department of Education issued guidelines on bullying in 2010 that further confirm the responsibility of public schools to take seriously harassment of students on the basis of their actual or perceived LGBT status. The guidelines state, "When students are subjected to harassment on the basis of their LGBT status, they may also… be subjected to forms of sex discrimination prohibited under Title IX. The fact that the harassment includes anti-LGBT comments or is partly based on the target's actual or perceived sexual orientation does not relieve a school of its obligation under Title IX to investigate and remedy overlapping sexual harassment or gender-based harassment." Asst. Sec'y of Educ. Russlynn Ali, Dep't of Educ. Office of Civ. Rights, *Guidance on Combating Bullying* (October 26, 2010), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf.

152. Because the District did nothing to stop the bullying, they sanctioned it. The District did nothing to abate the frequency or severity of the bulling. They were deliberately indifferent.

153. As a direct and proximate result of the BOARD's failure to act, G.C. was exposed to abuse and/or neglect which caused psychological harm, anxiety, an increase in problem behaviors and trauma. G.C. has incurred past medical and psychological expenses for the treatment of her injuries and will incur such expenses in the future.

WHEREFORE, Plaintiffs sue defendant BOARD for damages in excess of $15,000.00

including prejudgment and post-judgment interest to extent allowed by law, plus attorneys' fees

and costs and interest and demands a trial by jury for all triable issues.

## DEMAND FOR JURY TRIAL

L.C., individually and on behalf of G.C., hereby demands a trial by jury on all issues so triable.

Dated this 27th day of April, 2018.

BY:

Stephanie Langer, Esq.
Fla Bar no: 149720
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Phone: (305) 669-2822
Fax: (305) 442-4181
SLanger@justdigit.org
mdietz@justdigit.org
lgoodman@justdigit.org
aa@justdigit.org

Dan Kaufman, Esquire
Fla. Bar no: 902314
Asnis, Srebnick & Kaufman, L.L.C.
1580 Sawgrass Corporate Parkway
Suite 401
Sunrise, Florida 33323
Phone: 954-838-8300
dlklaw90@gmail.com