UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

L.C.,

    Plaintiff,

v.                                            CASE NO. 8:18-cv-1066-T-23AAS

PINELLAS COUNTY SCHOOL BOARD,

    Defendant.
_____/

## ORDER

Alleging that Pinellas County School Board employees failed to prevent an assault on her son by another student, L.C. sues (Doc.1) the Board under 42 U.S.C. § 1983, under Title II of the ADA, under Section 504 of the Rehabilitation Act, and under state law for negligence. The Board moves (Doc. 7) to dismiss the complaint for failure to state a claim. L.C. alleges the following facts, which are presumed true in weighing the sufficiency of the complaint to state a claim for relief.

## BACKGROUND

L.C. is the mother of G.C., a former Pinellas County school student, who requires "Exceptional Student Educational" services during school. G.C.'s disability renders him "particularly susceptible to peer pressure." In November 2015, G.C. was transferred from Tarpon Springs Middle School to Pinellas Secondary School, an "alternative school" for students with behavioral problems.

On February 16, 2016, G.C. and other students were serving an in-school suspension at Pinellas Secondary School. One student in the suspension room, Z.W.M., was a seventeen-year-old "known sexual predator," who had subjected two other students to unspecified "injuries." Two school employees, Shuntiel Green and Antonio Brown, were assigned to monitor the students in the suspension room. Another employee, " Mr. Mirah," was assigned to monitor Z.W.M. By notes passed from Z.W.M. to G.C., Z.W.M. encouraged G.C. — who was then eleven years old — to leave the school grounds with Z.W.M. Green and Brown saw Z.W.M. passing notes to G.C. but never read the notes and never ordered Z.W.M. to stop passing the notes. G.C. agreed to leave the school grounds, and Z.W.M. and G.C. together — in view of Mirah, Green, and Brown — left the suspension room. None of the employees tried to stop Z.W.M. or G.C. from leaving the suspension room. After leaving the school grounds, Z.W.M. sexually assaulted G.C., who escaped by faking an asthma attack and fleeing to a store. Z.W.M. later pleaded guilty to kidnapping G.C. and to lewd and lascivious conduct. Z.W.M. remains incarcerated.

After the assault, G.C. was permitted to return to Tarpon Springs Middle School. While at school, G.C. suffered severe anxiety. G.C. reported to a school official that G.C. was experiencing flashbacks to the sexual assault, a report that prompted the official to call the police. Within three months after returning to Tarpon Springs Middle School, G.C. twice suffered involuntary civil commitment under the Baker Act.

With G.C.'s parents' consent, school officials enrolled G.C. in a cluster program at Dunedin Middle School. The cluster program was designed to foster a small, supportive environment for a student with an emotional disability. L.C., however, alleges that the cluster program was a "complete failure." Students often "bullied" and "harassed" G.C., and G.C.'s parents typically retrieved G.C. early from the cluster program. Further, G.C. was injured both when a cluster program aide "flipped over a chair" in which G.C. was sitting and when a school official mistakenly changed G.C.'s bus route to no longer stop at G.C.'s home. Believing the cluster program incapable of either accommodating G.C.'s emotional disability or providing an appropriate education, L.C. requested that school officials permit G.C. to return to Tarpon Springs Middle School, but the school officials denied the request. L.C. contends that placing G.C. in the cluster program was an "intentional effort" to force G.C. to leave the public school system. G.C. permanently left the public school system during the 2016–17 school year.

## DISCUSSION

**Section 1983 Claim**

To impose Section 1983 liability against a school board, a plaintiff must show that a policy or custom of the school board caused the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff cannot rely on *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Instead, "recovery from a municipality is limited to acts . . . 'of the municipality' — that is, acts which

the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). A plaintiff must show that the execution of a policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 690–91. To establish a custom, a plaintiff must show a persistent and widespread practice; a random or isolated incident is insufficient. *Church v. City of Huntsville*, 30 F.3d 1332, 1345–46 (11th Cir. 1994).

Further, a plaintiff must show that the school board's action "was taken with the requisite degree of culpability, i.e., that the [school board's action] was taken with 'deliberate indifference' to its known or obvious consequences." *Davis v. Dekalb Cty. Sch. Dist.*, 233 F.3d 1367, 1375–76 (11th Cir. 2000). To demonstrate deliberate indifference, a plaintiff must show that the school board "'knew that harm to a federally protected right was substantially likely and that the [school board] failed to act on that likelihood.'" *Herrera v. Hillsborough Cty. Sch. Bd.*, 8:12-cv-2428, 2013 WL 12156525, at *5 (M.D. Fla. Mar. 22, 2013) (Moody, J.) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Co.*, 610 F.3d 588, 604 (11th Cir. 2010)). A school board "is not deliberately indifferent simply because the measures it takes are ultimately ineffective." *Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005). Also, a plaintiff must show that the school board's custom was the "moving force" behind the constitutional violation. *Sauls*, 399 F.3d at 1287.

*i. L.C. fails to plausibly allege a custom of inadequate training.*

L.C. alleges that the Board maintained a custom of inadequately training monitors to supervise disabled students. A "failure to train" qualifies as a municipal custom if "the need for more or different training [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that a failure to train amounts to deliberate indifference. *Canton*, 489 U.S. at 390; *Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994) ("Only when the failure to train amounts to 'deliberate indifference' can it properly be characterized as the 'policy' or 'custom' that is necessary for [Section] 1983 liability to attach.") A plaintiff must show that the school board knew, but disregarded, the consequences of an omission in a training program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998) ("Without notice of a need to train or supervise in a particular area, a municipality is not liable" for a failure to train employees). A plaintiff can show that a school board knew of a need to train by showing a pattern of similar constitutional violations caused by untrained employees. *Connick*, 563 U.S. at 62. However, an isolated injury caused by an untrained employee provides no basis for an inadequate-training claim. *Herrera*, 2013 WL 12156525, at \*5.

L.C. fails to allege facts demonstrating that the Board maintained a custom of failing to train employees to supervise students because L.C. alleges only an isolated incident. *Herrera*, 2013 WL 12156525, at \*5 ("[A] single incident [caused by an inadequately-trained employee] is insufficient" to state a claim) Although L.C.

*i. L.C. fails to plausibly allege a custom of inadequate training.*

L.C. alleges that the Board maintained a custom of inadequately training monitors to supervise disabled students. A "failure to train" qualifies as a municipal custom if "the need for more or different training [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that a failure to train amounts to deliberate indifference. *Canton*, 489 U.S. at 390; *Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994) ("Only when the failure to train amounts to 'deliberate indifference' can it properly be characterized as the 'policy' or 'custom' that is necessary for [Section] 1983 liability to attach.") A plaintiff must show that the school board knew, but disregarded, the consequences of an omission in a training program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998) ("Without notice of a need to train or supervise in a particular area, a municipality is not liable" for a failure to train employees). A plaintiff can show that a school board knew of a need to train by showing a pattern of similar constitutional violations caused by untrained employees. *Connick*, 563 U.S. at 62. However, an isolated injury caused by an untrained employee provides no basis for an inadequate-training claim. *Herrera*, 2013 WL 12156525, at *5.

L.C. fails to allege facts demonstrating that the Board maintained a custom of failing to train employees to supervise students because L.C. alleges only an isolated incident. *Herrera*, 2013 WL 12156525, at *5 ("[A] single incident [caused by an inadequately-trained employee] is insufficient" to state a claim) Although L.C.

alleges that Z.W.M. previously "injured" two other students, L.C. alleges no facts showing, for example, that the injuries resulted from inadequate supervision by Board employees in circumstances comparable to those of G.C. or that the failure of other employees on other occasions to supervise students caused an injury in comparable circumstances. Because L.C. alleges no pattern of similar employee failures caused by a lack of training, L.C. fails to "demonstrat[e] that [the Board] [was] on notice of the need to train and made a deliberate choice not to train." *Herrera*, 2013 WL 12156525, at *5; *Daniel*, 626 F. App'x at 835 (dismissing a Section 1983 claim for failing to "identify a pattern of prior similar instances of alleged improper supervision" by school employees). L.C. fails to state a Section 1983 claim based on inadequate training.

> *ii. L.C. fails to plausibly allege that the Board maintained a custom of failing to protect students from Z.W.M.*

Also, L.C. alleges that the Board's repeated failure to protect students from Z.W.M. constitutes a custom of deliberate indifference. To state a claim, L.C. must allege that a Board custom caused G.C.'s injury, that is, L.C. must allege facts showing a persistent and widespread practice of ignoring student-on-student assault. *Daniel*, 626 F. App'x at 832. But L.C. alleges no facts showing that the Board ignored assaults committed by Z.W.M. or anyone else. Although L.C. alleges that Z.W.M. "injured" two other students, L.C. alleges no facts showing, for example, that the Board knew of the injuries, that the other students were injured while

- 6 -

attending a Pinellas County school, that Z.W.M. injured the other students while ineffectively supervised, or that the injuries were as severe as the sexual assault suffered by G.C. L.C. fails to allege facts showing that the Board maintained a widespread practice of permitting student-on-student assault and therefore fails to demonstrate that a Board custom caused G.C.'s injury. *Porter v. Duval Co. Sch. Bd.*, No. 3:09-cv-285, 2010 WL 1252177, at *5 (M.D. Fla. Mar. 26, 2010) (Corrigan, J.) (dismissing a Section 1983 claim based on a sexual assault occurring on a school bus because the plaintiff failed to allege facts showing that the school board maintained a practice of indifference to student-on-student assault).

Further, L.C. fails to allege facts showing that the Board responded with deliberate indifference to the alleged custom of permitting student-on-student assault. In *Worthington v. Elmore*, a student sexually assaulted the plaintiff's disabled child on a school bus without the bus driver's noticing, and the plaintiff alleged that the school board's failure to assign another supervisor to the school bus caused the sexual assault. 160 F. App'x 877, 882 (11th Cir. Dec. 22, 2005). Although assigning another supervisor might have prevented the assault, "neither the fallibility of the [bus driver] nor the failure to provide a second supervisor amounts to deliberate indifference" because "'a school board is not deliberately indifferent simply because the measures it takes are ultimately ineffective.'" *Worthington*, 160 F. App'x at 882–83 (quoting *Sauls*, 399 F.3d at 1285). Although the assignment of a suspension monitor to Z.W.M. ultimately failed to prevent the sexual assault, L.C. fails to allege

facts showing that the failure amounts to deliberate indifference. Because L.C. fails to adequately allege a custom of deliberate indifference, L.C. fails to state a Section 1983 claim. Count V is dismissed.*

**Section 504 and the ADA**

To state a claim for a violation of Section 504 of the Rehabilitation Act or Title II of the Americans with Disabilities Act, L.C. must show (1) that G.C. is a qualified individual with a disability, (2) that G.C. was denied the benefit of a public service, and (3) that the denial resulted from discrimination based on a disability. *Herrera*, 2013 WL 12156525, at *3; *Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999) ("The standard for determining liability under the Rehabilitation Act is the same as that under the ADA.") And L.C. must allege facts showing that the discrimination resulted from bad faith or gross misjudgment. *E.W. v. Sch. Bd. of Miami-Dade Cty. Fla.*, 307 F. Supp. 2d 1363, 1370–71 (S.D. Fla. 2004).

However, to show "discrimination in the education context, something more than a mere failure to provide the 'free and appropriate education' required by the [Individuals with Disabilities Education Act (IDEA)] must be shown." *J.S. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (quoting *Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998)). In other words, allegations that

---

* L.C. appears to claim that the Board is liable under Section 1983 for violating G.C.'s right to equal protection. (Doc. 1 at ¶ 115) If L.C. intends to pursue a Section 1983 claim based on a violation equal protection, L.C. must in the amended complaint adequately apprise the Board about the nature of the claim.

- 8 -

the Board failed to provide the "free appropriate public education" required by the IDEA fail to show discrimination resulting from bad faith or gross misjudgment. *E.W.*, 307 F. Supp. at 1363; *C.P. v. Leon Cty. Sch. Bd.*, No. 4:03-cv-65, 2005 WL 2133699, at *3 (N.D. Fla. Aug. 27, 2005) (dismissing "IDEA claims dressed in [Section 504] and ADA clothing").

L.C. alleges that the Board's decision to maintain G.C. in the cluster program violates Section 504 and the ADA because the cluster program failed to provide G.C. a "free and appropriate public education," that is, that the Board failed to provide the education required by the IDEA. Although L.C. challenges the educational decisions by the Board in attempting to accommodate G.C.'s disability, L.C. fails to allege facts showing these decisions amounted to bad faith or gross misjudgment. *C.P.*, 2005 WL 2133699, at *4 ("A school district that seeks in good faith to provide an appropriate education for a disabled student does not violate [Section 504] or [the] ADA, even if . . . the district's educational judgments were incorrect.")

And the complaint lacks non-conclusory allegations showing discrimination based on G.C.'s disability. Although L.C. alleges that the Board was deliberately indifferent to bullying that G.C. suffered, L.C. fails to allege that the bullying was based on G.C.'s disability. "Absent some factual allegation linking the disability and the bullying," a plaintiff fails to state a claim based on deliberate indifference to bullying under the ADA and Section 504. *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 233 (E.D.N.Y. 2015) (finding that to hold otherwise

- 9 -

"would convert the ADA and Rehabilitation Act into generalized anti-bullying statutes.")  And L.C. contends that the Board discriminated against G.C. by changing G.C.'s bus route, but L.C. admits that the change was a "mistake." Because L.C. fails to allege facts showing discrimination based on a disability resulting from bad faith or gross misconduct, L.C. fails to state a claim under Section 504 and under the ADA.  Counts VI and VII are dismissed.

**Title IX**

The Board contends that Title IX provides no remedy for the alleged harassment by other students based on G.C.'s sexual orientation.  L.C. concedes that the complaint fails to state a Title IX claim and requests leave to amend.  Count VIII is dismissed.

**Individual Standing**

Besides asserting claims in her representative capacity, L.C. asserts claims in her personal capacity under Section 1983, the ADA, Section 504, and Title IX.  The Board argues that L.C. lacks standing to assert these claims in her personal capacity. L.C. concedes that she lacks standing and states that the inclusion of allegations claiming damages in a personal capacity was a "Scribner's" error.  L.C. requests leave "to amend the wherefore clauses of Counts V–VIII."  Besides amending the "wherefore clauses," L.C. must remove the allegations in Counts V–VIII, in which L.C. asserts an entitlement to damages in her personal capacity.

**Supplemental Jurisdiction**

The Board requests a dismissal of the state-law claims for lack of jurisdiction if the federal claims are dismissed. Because no federal claim remains, the exercise of supplemental jurisdiction over the state law claims is declined and Counts I–IV are dismissed.

## CONCLUSION

The Board's motion (Doc. 7) to dismiss is **GRANTED**, and the complaint is **DISMISSED**. No later than **DECEMBER 31, 2018**, L.C. may amend the complaint. Also, the complaint is replete with inconsistent and confusing designations. For example, the complaint interchangeably mentions L.C. and G.C. as "the Plaintiff" or "the Plaintiffs," calls the defendant "the Defendants," and occasionally alleges action by an undefined "District." An amended complaint must consistently describe the people and entities.

ORDERED in Tampa, Florida, on December 17, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE