UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

L.C., individually and on behalf of
G.C., a minor,

       Plaintiff,                        Case No. 8:18-cv-1066-T-23AAS

v.

PINELLAS COUNTY SCHOOL BOARD,

       Defendant.

_____/

## DEFENDANT PINELLAS COUNTY SCHOOL BOARD'S MOTION TO APPROVE SETTLEMENT AGREEMENT AND FOR RELATED RELIEF, SUPPORTING MEMORANDUM OF LAW, AND LOCAL RULE 3.01(G) CERTIFICATE

Pursuant to Federal Rule of Civil Procedure 17(c) and section 744.387, Florida Statutes, Defendant Pinellas County School Board ("PCSB") seeks entry of an Order approving the settlement reached between PCSB, on the one hand, and Plaintiff L.C. on behalf of G.C., a minor, and proposed intervenor Plaintiff, T.C., on the other. In support of its motion, PCSB has attached as **Exhibit A** the written Settlement Agreement and Release ("Settlement Agreement") that has been preliminarily agreed to by all parties in all material aspects except one: Plaintiff objects that there is no need for appointment of a guardian of the property of G.C., while PCSB maintains that appointment of a guardian of the property of G.C. is required pursuant to Florida Statutes § 744.387. Therefore, by this motion, PCSB seeks entry of an order approving the substance of the Settlement Agreement and also ordering Plaintiff to secure the appointment of a guardian of the property for G.C. to execute the Settlement Agreement and receive the settlement proceeds on G.C.'s behalf as provided in Florida Statutes § 744.387. In further support, PCSB states:

## I.      Background

1.     Plaintiff, L.C. instituted this action against PCSB on behalf of her minor child, G.C., seeking damages under 42 U.S.C. § 1983 that G.C. allegedly suffered because of an attempted assault by another minor student at PCSB, damages under Section 504 of the Rehabilitation Act and Title II of the American Disabilities Act for alleged discrimination against G.C. on the basis of his disabilities, and damages under various state-law negligence theories for the same alleged acts (the "Lawsuit"). *See* ECF 41.[1]

2.     Plaintiff also filed a due process administrative claim against PCSB in the matter styled *G.C. v. Pinellas County School Board*, DOAH No: 19-0204E, in the State of Florida Division of Administrative hearings (the "Administrative Claim").

3.     During the course of this proceeding, G.C. relocated to Texas to live with his biological father, T.C. By order of the District Court of the 416th Judicial District, in Collin County Texas, T.C. was appointed Temporary Sole Managing Conservator of G.C. *See* Order attached as **Exhibit B**.

4.     Pursuant to that same order, Plaintiff, at least temporarily, has lost custody of G.C. because the Court found that it was in G.C.'s best interest. Plaintiff was appointed as Temporary Possessory Conservator of G.C. *See* **Exhibit B**.

5.     As a result, T.C. has filed an unopposed motion to intervene on G.C.'s behalf in this case, which remains pending. *See* ECF 68.

6.     Through their respective counsel, the parties, including T.C., have preliminarily agreed to settle their disputes according to the terms set forth in the written Settlement Agreement. In sum, Plaintiff L.C., proposed intervenor T.C., and G.C. would release PCSB of any liability

---

[1] Although Plaintiff L.C.'s original complaint also asserted claims on her own behalf, those claims were dropped in the amended complaint.

related to the claims raised in the Lawsuit and the Administrative Claim and dismiss the Lawsuit and Administrative Claim with prejudice; PCSB would pay $115,000.00 to G.C.; and all parties would bear responsibility for the payment of their own attorneys' fees and costs.

## II. Information Required by Florida Probate Rule 5.636

7. Florida Probate Rule 5.636 requires certain information to be included in a motion to approve a settlement agreement involving a minor, including the minor's initials, residence address, and year of birth of the minor; the name and residence address of the natural guardians or other persons having legal custody of the minor; as well as the name and address of any guardian appointed for the minor. *See* Fla. Probate R. 5.636(b)(1)-(3); *see also Doolin v. Pneumo Abex LLC, et al.*, 3:16-CV-778-J-34PDB, 2019 WL 665748, at *1 (M.D. Fla. Feb. 5, 2019) (requiring petition to approve minor's settlement comply with Florida Probate Rule 5.636); *A.G.R. v. United States*, Case No. 2:18-cv-342-FtM-38MRM, 2019 454449 (M.D. Fla. Jan. 31, 2019) (same); *Mochocki v. United States*, Case No. 3:15-cv-377-J-34JRK, 2017 WL 3701075 (M.D. Fla. May 10, 2017) (same).

8. G.C.'s year of birth is 2004.

9. G.C. currently resides with his father, T.C. in Texas. Because T.C. is a law enforcement officer, Plaintiff has proposed to disclose his residence address only in a document to be filed under seal.

10. No guardian has been appointed for G.C. as yet.

## III. Memorandum of Law

This Court must address three issues in connection with its review of the Settlement Agreement: (A) whether it has jurisdiction to approve the Settlement Agreement; (B) whether, under Federal Rule 17(c), it is necessary to appoint a guardian *ad litem* to review and make a

recommendation regarding approval of the Settlement Agreement, or enter some other order for the protection of G.C.'s interests; and (C) whether it is necessary to have a guardian of the property appointed for G.C. in order to fulfill the requirements of Florida law for settlement of an action brought on behalf of a minor.

For the reasons detailed below, PCSB asks this Court to find that it has jurisdiction to approve the Settlement Agreement because it is the Court in which the action was filed. Second, PCSB asks this Court to grant T.C.'s pending motion to intervene in this case, find that it is unnecessary to appoint a guardian *ad litem* for G.C., and further find that the Settlement Agreement is in G.C.'s best interests. Finally, PCSB requests that this Court enter an order requiring Plaintiff to have a legal guardian of G.C.'s property appointed to execute the Settlement Agreement on G.C.'s behalf and to receive payment of the settlement sum from PCSB as provided in the Settlement Agreement and pursuant to Florida Statutes § 744.387(3)(b).

### A. This Court has jurisdiction to approve the Settlement Agreement.

This Court has jurisdiction to approve the Settlement Agreement involving G.C. because it is the Court in which the Lawsuit was filed. *See Wilson v. Griffiths*, 811 So. 2d 709, 712 (Fla. 5th DCA 2002) (the only court having jurisdiction to approve the settlement of a minor's claim is the court in which the action is pending); *Maugeri v. Plourde*, 3096 So. 2d 1215, 1216 (Fla. 3d DCA 1981) (same); *Meyers v. U.S.*, No. 6:13-cv-1555-Orl-41TBS, 2014 WL 5038585, at *2 (M.D. Fla. Sept. 24, 2014) (recognizing court has jurisdiction over settlement involving minor's claims because it was the court in which action was filed); *Perez v. 1st and 10 Sports Bar & Grill*, No. 13-80912-CV-MIDDLEBROOKS, 2016 WL 8539789 at *1 (S.D. Fla. April 18, 2016) (same).

The *Wilson* case is instructive as it involved a lawsuit brought in Florida on behalf of a minor resident in another state. In *Wilson*, the minor plaintiff was an Ohio resident, but was injured

4

in a car accident in Brevard County, Florida. *Id.* at 710. Through his mother, the minor child filed a lawsuit in the circuit court of Brevard County seeking to recover damages from the driver of the vehicle and her insurance company, United Services Automobile Association. *Id.* at 711. After the lawsuit was filed, United tendered the policy limits of $100,000.00 to the plaintiff, which the plaintiff, through his mother, accepted. *Id.*

The attorney for the plaintiff filed a motion with the Florida court seeking approval of the settlement and the attorney's contingency fee claim of $33,333.34. *Id.* The minor plaintiff's mother objected to the attorney's motion on the grounds that the court in Ohio had jurisdiction to determine the reasonableness of the settlement agreement and attorney fee claim. *Id.* The *Wilson* court sided with the attorney based on the express language of section 744.387(3)(a), which states: "No settlement after an action has been commenced by or on behalf of a ward shall be effective unless approved by the court having jurisdiction of the action." *Id.* at 712. The *Wilson* court concluded that "the clear language of this statute" vests exclusive jurisdiction to determine the reasonableness of the settlement agreement with the Brevard County circuit court, the court in which the lawsuit was filed. *Id.*

As mentioned above, G.C. has relocated to Texas, at least on a temporary basis, to live with his biological father, T.C. Nevertheless, like the courts in *Wilson*, *Maugeri*, *Meyers*, and *Perez*, this Court should find that it has jurisdiction to approve the Settlement Agreement because it is the Court in which the Lawsuit was filed.

**B. This Court should grant T.C.'s motion to intervene and find that the Settlement Agreement is in G.C.'s best interest.**

As the Eleventh Circuit recognized in *Burke v. Smith*, 252 F.3d 1260, 1264 (11th Cir. 2001), "[i]t is well established that '[t]he appointment of a guardian ad litem is a procedural question controlled by Rule 17(c) of the Federal Rules of Civil Procedure.'" (citations omitted).

5

Rule 17(c) does not require that a district court appoint a guardian ad litem in all cases. *See Burke*, 252 F.3d at 1264 (citing *Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958)). Rather, Rule 17(c) provides a district court the discretion to appoint a guardian ad litem in two circumstances: (1) where "an infant ...[is] *not otherwise represented* in an action...." *Croce v. Bromley Corp.*, 623 F.2d 1084, 1093 (5th Cir. 1980)[2] (citing Fed. R. Civ. P. 17(c)) (emphasis added)), or (2) where a conflict of interest exists between the representative and minor child. *See Burke*, 252 F.3d at 1264.

Here, the Lawsuit was originally filed by and through Plaintiff L.C., G.C.'s mother. *Burke*, 252 F.3d at 1264 (when a minor is represented by a parent who is a party to the lawsuit and who has the same interests as the child there is no inherent conflict of interest). PCSB does not have reason to believe there is any conflict between the interests of Plaintiff L.C. and those of G.C., but acknowledges that potential for conflict might be inferred from the transfer of G.C.'s custody from L.C. to T.C. If this Court determines that there is or may be a conflict of interest between L.C. and G.C., the Court has an alternative to appointment of a guardian *ad litem*. *See* Fed. R. Civ. P. 17(c) ("The court shall appoint a guardian *ad litem* for an infant or incompetent person not otherwise represented in an action *or shall make such other order as it deems proper for the protection of the infant or incompetent person*.") (emphasis added). The Court could ensure G.C.'s interests in this case are protected by granting T.C.'s pending motion to intervene on G.C.'s behalf. *See* ECF 68.

On information and belief, allowing T.C. to intervene on G.C.'s behalf would resolve the matter of any potential conflict of interest between Plaintiff L.C. and G.C., and this Court could

---

[2] Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court is bound by cases decided by the former Fifth Circuit before October 1, 1981.

then proceed to analyze whether the Settlement Agreement is in G.C.'s best interest. *See Burke*, 252 F.3d at 1264 ("unless a conflict of interest exists between the representative and minor, a district court need not even consider the question [of] whether a guardian *ad litem* should be appointed."); *Meyers*, 2014 WL 5038585, at *4 (recognizing that, in the absence of a conflict of interest, the district court is vested with the authority to determine whether the settlement agreement is in the minor's best interest). PCSB believes this course of action would be the most appropriate and cost-effective means for resolving any potential conflict of interest between L.C. and G.C.

Generally, a settlement agreement is in the minor's best interest if it is "fair, adequate, reasonable and is not the product of collusion of the parties." *Burke*, 252 F.3d at 1264. Neither L.C. nor T.C. are asserting claims for damages on their own behalf, so there is no risk that they negotiated the Settlement Agreement to favor their own damage claims over the ones asserted by G.C., or that the Settlement Agreement is the byproduct of collusion. *See* ECF 41 (amending prayers for relief on all claims to seek relief on behalf of G.C. only). Further, the Settlement Agreement was negotiated by two attorneys hired by Plaintiff who presumably "share [G.C.'s] interest in maximizing the settlement amount," to be paid by PCSB. *See Meyers*, 2014 WL 5038585, at *4 (recognizing the attorneys' negotiation of the settlement amount as a factor militating against finding a potential conflict of interest between the parent and minor). Finally, PCSB has moved to dismiss the federal claims with prejudice, and has several viable defenses to the claims raised in the Lawsuit and the Administrative Claim. Therefore, a settlement in the amount of $115,000.00 is fair, adequate and reasonable in light of the uncertainty that exists with respect to whether Plaintiff can succeed on these claims.

Based on the above, PCSB asks this Court to enter an order granting T.C.'s motion to intervene, and finding that the Settlement Agreement is in G.C.'s best interest, or granting such other relief as may be available and appropriate under the circumstances to ensure that G.C.'s interest are protected.

### C. This Court should order Plaintiff to secure the appointment of a guardian for G.C.'s property by a court of competent jurisdiction.

Federal Rule of Civil Procedure 17(c) is silent on whether a guardian should be appointed to receive or manage the funds that G.C. receives. However, several courts from the Middle District of Florida have turned to Florida state law to answer this question. *See Meyers*, 2014 WL 5038585 at *3 (concluding Florida statutes should be relied upon to determine if a guardian should be appointed to manage funds received by a minor because Rule 17(c) was silent on this topic and Florida law was "well-developed" on the topic); *Jackson v. Magical Cruise Co. Ltd.*, Case No. 6:14-cv-1997-Orl-18KRS, 2016 WL 2647689 (M.D. Fla. April 22, 2016) (citing *Meyers* and determining that it was appropriate to rely on Florida law to determine whether a guardian should be appointed); *Wisekal v. Lab. Corp. of Am. Holdings*, 182 F. Supp. 3d 1296, 1300 (S.D. Fla. 2016) (relying on section 744.387 to determine that a guardian of the property must be appointed to settle minor's claim). Thus, it is appropriate for the Court in this case to turn to Florida statutes to determine whether it should appoint a guardian to receive and manage the funds G.C. receives. *See Meyers*, 2014 WL 5038585 at *3.

Under Florida Statutes § 744.301(2), parents or natural guardians may receive and manage minor child's settlement proceeds "if the amounts received in aggregate do not exceed $15,000." However, if the net proceeds to the minor exceed $15,000.00, then a guardian *must* be appointed by the Court to receive and manage the funds. § 744.387(3)(b), Fla. Stat. ("When the amount of net settlement to the war or judgment exceeds $15,000 and no guardian has been appointed, the

court *shall* require the appointment of a guardian for the property.") (emphasis added). Because G.C. would receive more than $15,000.00 from PCSB to settle the claims he has asserted, a guardian of G.C.'s property must be appointed by a court of competent jurisdiction to receive and manage G.C.'s settlement proceeds. That guardian is the only one authorized under Florida law to execute the Settlement Agreement on G.C.'s behalf and to receive payment of the settlement sum from PCSB. *See* Fla. Stat. § 744.397(3)(b) and (4).

G.C. now resides in Texas with his father, T.C., where PCSB believes proceedings remain pending before the District Court of the 416th Judicial District, in Collin County Texas, and that court has jurisdiction over G.C.'s person. *See* **Exhibit B**. Also, Florida Statutes § 744.308 permits L.C. or G.C. to petition a Florida state court for appointment of a Florida guardian of G.C.'s Florida property consisting of the settlement sum. Accordingly, PCSB seeks entry of an Order directing Plaintiff L.C. or proposed intervenor Plaintiff T.C. to seek appointment of a guardian of G.C.'s property to execute the Settlement Agreement on G.C.'s behalf and to receive and manage the funds that G.C. is to receive as a result of the Settlement Agreement. *See Wilson* 811 So. 2d at 711-12 (upholding trial court order requiring the funds for a minor child from Ohio to be placed into a trust account until the court in Ohio having jurisdiction over the guardianship decided how and where the minor's funds should be maintained); *Wisekal v. Lab. Corp. of Am. Holdings*, 182 F. Supp. 3d 1296, 1300 (S.D. Fla. 2016) (instructing counsel for plaintiff to petition the court for the "appointment of a limited guardian of the person authorized to settle and consummate a settlement of the minors' claims, as well as appointment of a guardian of the property authorized to collect, receive, manage and dispose of the proceeds of settlement on behalf of the minors."). Under section 744.387, Florida Statutes, that same guardian also will be authorized to consent to

the entry of a judgment of dismissal of this action with prejudice, as provided in the Settlement Agreement.

## IV.    Conclusion

For the foregoing reasons, PCSB respectfully requests that this Court find that it has jurisdiction to consider this motion and the merits of the Settlement Agreement and enter an order granting T.C.'s motion to intervene, finding the Settlement Agreement is in G.C.'s best interests, and requiring L.C. and/or T.C. to secure the appointment of a guardian of the property of G.C. authorized to execute the Settlement Agreement and release on G.C.'s behalf, consent to the dismissal with prejudice of this action, and receive and manage the funds G.C. receives from the Settlement Agreement, or grant such other or further relief as this Court deems just under the circumstances.

## LOCAL RULE 3.01(G) CERTIFICATE

Undersigned counsel for PCSB certifies pursuant to Local Rule 3.01(g) that he conferred in good faith with counsel for the Plaintiff concerning a resolution of the relief sought in this motion. Specifically, undersigned counsel spoke to Daniel Kaufmann on April 17, 2019 and April 22, 2019, and Stephanie Langer on April 22, 2019. Counsel for Plaintiff does not oppose the relief sought in Sections A and B of this Motion, but opposes the relief PCSB seeks in Section C of this Motion. The efforts to resolve the conflict regarding the relief sought in Section C of this Motion were unsuccessful.

Respectfully submitted this 23rd day of April, 2019.

By: */s/ Patrick M. Causey*
Charles M. Harris, Jr.
charris@trenam.com;
gkesinger@trenam.com;
ohoeppner@trenam.com;
Beth A. Cronin

bcronin@trenam.com; slord@trenam.com
Patrick M. Causey
pcausey@trenam.com; jstraw@trenam.com
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
727-896-7171 / 727-822-8048 (facsimile)

*Counsel for Defendant School Board*

## CERTIFICATE OF SERVICE

I certify that on April 23, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record.

*/s/ Patrick M. Causey*
Attorney

# EXHIBIT A

# GENERAL RELEASE AND SETTLEMENT AGREEMENT

This General Release and Settlement Agreement ("Agreement") is entered into by L.C. and T.C., individually and on behalf of G.C., a minor child (collectively "Plaintiff"), on the one hand, and the Pinellas County School Board ("PCSB") on the other (collectively, the "Parties"). The effective date of this Agreement is the date on which it has been approved by Chief Judge Merryday of the United States District Court for the Middle District of Florida, Tampa Division.

1. **Background: The Lawsuit and Administrative Hearing.** Plaintiff instituted the matter styled *L.C. individually and on behalf of G.C., a minor v. Pinellas County School Board*, Case No. 8:18-cv-1066-T23-AAS, in the United States District Court, Middle District of Florida, Tampa Division, seeking damages under 42 U.S.C. § 1983 ("Section 1983") that G.C. allegedly suffered as a result of an attempted assault by another minor student, damages under Section 504 of the Rehabilitation Act ("Section 504") and Title II of the American Disabilities Act ("ADA") for alleged discrimination against G.C. on the basis of his disabilities, and damages under various state law based negligence claims related to both the attempted assault and alleged discrimination (the "Lawsuit"). Plaintiff also instituted an administrative claim against PCSB in the matter styled *G.C. v. Pinellas County School Board*, DOAH No: 19-0204E, in the State of Florida, Division of Administrative Hearings (the "Administrative Claim"). PCSB denies any wrongdoing in the Lawsuit and Administrative Claim, and the Parties agree that this Agreement is a compromise of disputed claims and that the payment made by PCSB is not construed as an admission of liability.

2. **Consideration.** In exchange for Plaintiff executing the release identified in Paragraph 5 of the Agreement, and Plaintiff dismissing with prejudice the Lawsuit and Administrative Claim pursuant to Paragraph 4 of the Agreement, PCSB will pay to the duly appointed guardian of the property of G.C. the sum of $115,000.00 within 30 calendar days after the later of the effective date of the Agreement or the date on which it has been executed by the duly appointed guardian of the property of G.C..

3. **Consideration Acknowledged.** The Parties acknowledge that the covenants contained in this Agreement provide good and sufficient consideration for every promise, duty, release, obligation, and right contained in this Agreement.

4. **Dismissal of Lawsuit and Administrative Claim.** Within five business days of the effective date of this Agreement, Plaintiff will dismiss with prejudice the Lawsuit and Administrative Claim, with each side to bear their own attorneys' fees and costs.

5. **Release of Claims by Plaintiff, individually and on behalf of G.C.** Plaintiff remises, releases, acquits, satisfies and forever discharges PCSB and any reinsurer or insurer, employees, agents, legal counsel, and any affiliated entities (the "PCSB Releasees"), of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies,

1

agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which Plaintiff ever had, now have, or hereafter can, shall or may have, against the PCSB Releasees, for, upon or by reason of any matter, cause or thing whatsoever, whether direct or vicarious, from the beginning of the world to the day this document is signed, including but not limited to any and all claims made in the Lawsuit or Administrative Claims, which shall include any claims for attorney's fees, expenses and costs. Plaintiff agrees to satisfy or otherwise resolve any lien or subrogated interest for Medicare, Medicaid, workers compensation and/or health care benefits paid or payable to Plaintiff as a consequence of the occurrence settled pursuant to this agreement. Further, it is understood that this Release shall include a release of all active and vicarious liability and shall also include a release of any person or entity who would be vicariously responsible for the acts of the PCSB Releasees, including, but not limited to any lessors, assigns, corporations, or entities operating as a fictitious name. Plaintiff acknowledges and agrees to expressly waive and assumes the risk of any and all claims for damages against the PCSB Releasees which exist as of this date but of which Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Release. Plaintiff understands that the Lawsuit and Administrative Claim is being settled as a business decision only and that payment of the sums specified herein are being made as a complete compromise of matters involving disputed issues of law and fact. Plaintiff thereby assumes the risk that the facts or law may be otherwise than Plaintiff believes.

6. **Authority.** Each of the Parties warrants and represents that this Agreement has been duly authorized, executed and delivered, that this Agreement constitutes valid and binding obligations enforceable against them in accordance with the Agreement's terms, and that the execution and delivery of this Agreement will not violate or contravene in any way the articles of incorporation or bylaws or partnership agreement, as may be applicable, of any of the Parties or any agreement or instrument to which any of the Parties is a party. The Parties agree to indemnify and hold each other harmless in the event that any non-party asserts a claim against one of the parties for the matters raised in the Lawsuit or Administrative Claim, or covered by the Release.

7. **Ownership of Claims.** Plaintiff warrants and represents that Plaintiff owns the claims and causes of action that are released in Paragraph 5, and the claims and causes of action have not been sold, assigned, granted or transferred, and will not be sold, assigned, granted or transfered to any other person, firm or corporation.

8. **Confidentiality.** Other than facilitating the settlement, dismissal, and closure of the Lawsuit, the Administrative Claims, or the enforcement of this Agreement, Plaintiff, their heirs or assigns, and their attorneys or representatives, expressly agree that, subject to orders of any duly authorized court or governmental agency, they will not contact or reveal to anyone (other than their own professional advisors and/or consultants, who shall first agree to be bound by the confidentiality provision of this Agreement), including, but not limited to, the news media; websites; chat rooms; blogs; consumer protection organizations; newsletters and other materials; the terms of this Agreement or consideration paid, directly or indirectly; and, further agree that if Plaintiff is contacted by anyone else, other than their own professionals advisors and/or

consultants, they will not reveal the terms and conditions of the Agreement, other than to say that these matters have settled. The confidential information shall not be given or provided to anyone (other than the Party's professional advisors and/or consultants, as provided for above). Plaintiff agrees to notify PCSB and PCSB agrees to notify the Plaintiff within a reasonable amount of time if they receive notice of a request or action from a court or governmental entity requiring the production or disclosure of the terms, amount, range, estimate, structure, parties, and/or details of this settlement so that either party may appear and oppose such action.

Should Plaintiff be contacted by any third party, the Parties agree that Plaintiff shall only represent that the Lawsuits have been settled and shall not reveal the terms and conditions of said settlement and/or other details of the settlement.

9. **Costs and Attorneys' Fees.** The Parties agree that they will pay their own respective costs, expenses and attorneys' fees incurred in connection with the Lawsuit and the Administrative Claims, including those incurred in any way related to the matters asserted in the Lawsuit and Administrative Claim, whether before they were filed or after.

10. **Entirety and Amendments.** This Agreement embodies the entire agreement between the Parties regarding this settlement, supersedes all prior agreements and understandings, if any, relating to this subject matter, and may be amended only by an instrument in writing executed jointly by the Parties, and supplemented only by documents delivered, or to be delivered, in accordance with the express terms of the Agreement.

11. **Governing Law.** This Agreement is intended to be performed in the State of Florida and the substantive laws of Florida shall govern the validity, construction, enforcement, and interpretation of this Agreement.

12. **Parties Bound.** This Agreement shall be binding upon and inure to the benefit of the Parties, their respective heirs, successors, and assigns.

13. **Resolution of Disputes**. The Parties agree that the proper venue for any action to enforce this Agreement is in the United States District Court for the Middle District of Florida, Tampa Division.

14. **Agreement Read by Parties.** The Parties represent and warrant that they have read, and that they have had their respective legal counsel review and explain, this Agreement before signing it.

15. **Construction.** The Parties agree that this Agreement is an instrument negotiated by all of the Parties and will not be construed against its drafter.

16.     **No Reliance on Representations of Others.**  In entering into this Agreement, the Parties have not relied on any statements or representations pertaining to this matter by the other side, or by any person representing the other side, but instead the Parties have relied on the advice of their own attorneys, who have reviewed this document, and on their own independent judgment as to their rights and obligations under this Agreement.


17.     **Counterparts.**  This Agreement may be executed and delivered in any number of identical counterparts and via facsimile, electronic or digital signature, each of which shall be deemed to be an original for all purposes.


18.     **Severability.**  If any provision or any part of any provision of this Agreement is for any reason held to be invalid, unenforceable, or contrary to any public policy, law, statute or ordinance, then the remainder of this Agreement shall not be affected thereby, and shall remain valid and fully enforceable unless excision of the invalid or unenforceable provision shall operate to deprive one Party of a material and substantial part of the object of and consideration to be secured and received by that Party hereunder.


**SIGNATURE PAGES TO FOLLOW**

**IN WITNESS HEREOF,** the Parties have executed this Agreement on the date set forth below.

Date: _____

_____
T.C.

_____
Print Name

STATE OF TEXAS
COUNTY OF _____

BEFORE ME, the undersigned authority, on this day personally appeared _____, known to me to be the person who executed the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on _____, 2019.

_____
NOTARY PUBLIC,
STATE OF TEXAS

My Commission Expires:_____

_____

L.C.

_____

Print Name


STATE OF FLORIDA
COUNTY OF _____

      BEFORE ME, the undersigned authority, on this day personally appeared _____, known to me to be the person who executed the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

      Given under my hand and seal of office on _____, 2019.


_____

NOTARY PUBLIC,
STATE OF FLORIDA

My Commission Expires:_____

_____
as Duly Appointed Guardian of the Property
of G.C. on behalf of G.C.

_____
Print Name


STATE OF _____
COUNTY OF _____

      BEFORE ME, the undersigned authority, on this day personally appeared
_____, known to me to be the person who executed the foregoing
instrument and acknowledged to me that he executed the same for the purposes and consideration
therein expressed.

      Given under my hand and seal of office on _____, 2019.


_____
NOTARY PUBLIC,
STATE OF _____

My Commission Expires:_____


**APPROVED AS TO FORM AND CONTENT**


_____

_____
Counsel for Plaintiff

Date: _____     By: _____
                                Pinellas County School Board

                                Its:_____


STATE OF FLORIDA
COUNTY OF _____

       BEFORE ME, the undersigned authority, on this day personally appeared
_____, as _____ of the Pinellas County School Board,
known to me to be the person who executed the foregoing instrument and acknowledged to me
that s/he executed the same for the purposes and consideration therein expressed.

       Given under my hand and seal of office on _____, 2019.


                                _____
                                NOTARY PUBLIC,
                                STATE OF _____

                                My Commission Expires:_____

# EXHIBIT B

Filed: 2/27/2019 5:57 PM
Lynne Finley
District Clerk
Collin County, Texas
By Rian Ramirez Deputy
Envelope ID: ██████████

**NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA**

NO. ██████████

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| G.T.C. | § | 416TH JUDICIAL DISTRICT |
| | § | |
| A CHILD | § | COLLIN COUNTY, TEXAS |

### TEMPORARY ORDERS IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP

On February 28, 2019 the Court heard Petitioner's application for temporary orders.

*Appearances*

Petitioner, Thomas Allen Craig, appeared in person and through attorney of record, Clint C. Brown, and announced ready.

Respondent, Lindsay Rachael Cronan, although duly and properly notified, did not appear and wholly made default.

*Jurisdiction*

The Court, after examining the record, and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that this Court has jurisdiction of this case and of all the parties.

*Conservatorship*

The following orders are for the safety and welfare and in the best interest of the following child:

    Name:           G.T.C.
    Sex:            Male
    Birth date:     07/22/2004
    Home state:     Texas



IT IS ORDERED that Thomas Allen Craig is appointed Temporary Sole Managing Conservator and Lindsay Rachael Cronan is appointed Temporary Possessory Conservator of the following child: G.T.C.

IT IS ORDERED that, at all times, Thomas Allen Craig, as a parent temporary sole managing conservator, shall have the following rights:

1.    the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child;

2.    the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

3.    the right of access to medical, dental, psychological, and educational records of the child;

4.    the right to consult with a physician, dentist, or psychologist of the child;

5.    the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.    the right to attend school activities;

7.    the right to be designated on the child's records as a person to be notified in case of an emergency;

8.    the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

9.    the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED that, at all times, Lindsay Rachael Cronan, as a parent temporary possessory conservator, shall have the following rights:

1.    the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child;

2.    the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

4828-6166-7721, v. 1

3.      the right of access to medical, dental, psychological, and educational records of the child;

4.      the right to consult with a physician, dentist, or psychologist of the child;

5.      the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.      the right to attend school activities;

7.      the right to be designated on the child's records as a person to be notified in case of an emergency;

8.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

9.      the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED that, at all times, Thomas Allen Craig, as a parent temporary sole

managing conservator shall have the following duties:

1.      the duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child;

2.      the duty to inform the other conservator of the child if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Texas Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the fortieth day after the date the conservator of the child begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;

3.      the duty to inform the other conservator of the child if the conservator establishes a residence with a person who the conservator knows is the subject of a final protective order sought by an individual other than the conservator that is in effect on the date the residence with the person is established. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the conservator establishes residence with the person who is the subject of the final

protective order. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;

    4.    the duty to inform the other conservator of the child if the conservator resides with, or allows unsupervised access to a child by, a person who is the subject of a final protective order sought by the conservator after the expiration of the sixty-day period following the date the final protective order is issued. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the ninetieth day after the date the final protective order was issued. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE; and

    5.    the duty to inform the other conservator of the child if the conservator is the subject of a final protective order issued after the date of the order establishing conservatorship. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the final protective order was issued. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

    IT IS ORDERED that, at all times, Lindsay Rachael Cronan, as a parent temporary possessory conservator, shall have the following duties:

    1.    the duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child;

    2.    the duty to inform the other conservator of the child if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Texas Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the fortieth day after the date the conservator of the child begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;

    3.    the duty to inform the other conservator of the child if the conservator establishes a residence with a person who the conservator knows is the subject of a final protective order sought by an individual other than the conservator that is in effect on the date the residence with the person is established. IT IS ORDERED that notice of this information shall be provided to

the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the conservator establishes residence with the person who is the subject of the final protective order. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE:

4.    the duty to inform the other conservator of the child if the conservator resides with, or allows unsupervised access to a child by, a person who is the subject of a final protective order sought by the conservator after the expiration of the sixty-day period following the date the final protective order is issued. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the ninetieth day after the date the final protective order was issued. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE; and

5.    the duty to inform the other conservator of the child if the conservator is the subject of a final protective order issued after the date of the order establishing conservatorship. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the final protective order was issued. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during his periods of possession, Thomas Allen Craig, as a parent

temporary sole managing conservator, shall have the following rights and duties:

1.    the duty of care, control, protection, and reasonable discipline of the child;

2.    the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.    the right to consent for the child to medical and dental care not involving an invasive procedure; and

4.    the right to direct the moral and religious training of the child.

IT IS ORDERED that, during her periods of possession, Lindsay Rachael Cronan, as a

parent temporary possessory conservator, shall have the following rights and duties:

1.    the duty of care, control, protection, and reasonable discipline of the child;

2.    the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.	the right to consent for the child to medical and dental care not involving an invasive procedure; and

4.	the right to direct the moral and religious training of the child.

IT IS ORDERED that Thomas Allen Craig, as parent temporary sole managing conservator, shall have the following exclusive rights and duty:

1.	the right to designate the primary residence of the child;

2.	the right to consent to medical, dental, and surgical treatment involving invasive procedures;

3.	the right to consent to psychiatric and psychological treatment of the child;

4.	the right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

5.	the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

6.	the right to consent to marriage and to enlistment in the armed forces of the United States;

7.	the right to make decisions concerning the child's education;

8.	except as provided by section 264.0111 of the Texas Family Code, the right to the services and earnings of the child;

9.	except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

10.	the duty to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents.

IT IS ORDERED that Thomas Allen Craig shall have the exclusive right and duty to prepare and file income tax returns for the estate of G.T.C.

IT IS ORDERED that Lindsay Rachael Cronan shall furnish such information to Thomas Allen Craig as is requested to prepare federal income tax returns for the child's estate within

---

TEMPORARY ORDERS IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP

thirty days of receipt of a written request for the information, and in no event shall the information be furnished later than March 15, 2019. As requested information becomes available after that date, it shall be provided within ten days of receipt.



*Child Support*



Vernon, Allen J. Col. (Ret.), U.S. certified mail, return receipt requested, at any address of resident you of any termination of employment. This notice shall be given no later than seven [...]

721, v. 1



**Clerk's Duties**

provisions for withholding from earnings provided above for other child support obligations.





 ORDERS IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP

4828-6166-7721, v. 1





4828-6166-7721, v. 1



(c) ▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

c. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮ Pursuant to Section ▮▮▮▮▮▮▮ of the Texas Family Code ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ ORDERED to pay Thomas Allen Craig as child support the amount of one hundred fifty dollars

▮▮▮▮▮▮ ORDERS IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP                    Page 13 of 20





7721, v. 1

6.

b. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

● ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

● ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

● ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

4828-6166-7721. v. 1





TEMPORARY ORDERS IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP

4828-6166-7721, v. 1



COLLIN COUNTY, TEXAS

4828-6166-7721, v. 1



Title 31 of the United States Code, the

7721. v. 1



or within the

6.





_____ dollars ($_____) to Clint ██████

7721. v. 1



These Temporary Orders shall continue in force until the signing of the final order or until further order of this Court.

SIGNED on     **2/28/2019**

*andrea S. Thompson*
_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:



APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:



Thomas Allen Craig



**TEMPORARY ORDERS IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP**    Page 54 of 24



STATE OF TEXAS      )
COUNTY OF COLLIN  )
I, Lynne Finley, District Clerk in and for Collin County Texas,
do hereby certify that the above foregoing is a true and correct copy of the
original document as the same appears on the file in the District Court,
Collin County, Texas. Witness my hand and seal of said Court, this
the ____ day of ____ A.D., 20 ____
        LYNNE FINLEY, DISTRICT CLERK
        COLLIN COUNTY, TEXAS
        _____ DEPUTY